Pee CuRIAM.
This an ejectment upon which a verdict and judgment were given for the defendants, in February term, 1816, in the Circuit Court for the county of Montgomery. The facts are these: —
A grant issued for the lands in question to John Elliott, 10th July, 1788, 640 acres. He died May, .1789, leaving George S. Elliot, his only son and heir, then of the age of one year, who conveyed to Darby, 22d January, 1816. Oldham and Johnson were appointed the administrators of J. Elliot, deceased, and were removed by repeal, April, 1791, at which time Zilpha Elliot, the widow, was appointed. She was also at the same time appointed the guardian of George S. Elliot. At April term, 1792, George *746 Neville was appointed special guardian to receive notice of two sei. fa.’s, one at the instance of James Elliot, the other at the instance of Robert Nelson, who had recovered judgments against the administrators. These sei.fa.'s issued in June term, 1792, reciting judgment against John Elliot, deceased. At April, 1783, an order was made for the condemnation of two tracts in Sumner County, to satisfy these judgments. At July term, 1793, a sale was ordered, and also an order of sale was made for two tracts in Davidson, which issued, and the lands were sold. At October, 1798, it was ordered that execution issue against the real estate of John Elliot, deceased, to satisfy the residue of the two before mentioned judgments, and one in the name of Robert Weakley.
The judgment in favor of James Elliot was founded upon a writ, returned to April, 1791, against Oldham * and Johnston, administrators. It was returned executed; the plea of plene administravit was pleaded, and a note made that no affidavit was required. A verdict was given for the plaintiff; damages, ¿£163 16s. A fi. fa. issued against the goods and chattels, lands and tenements of J. Elliot, deceased, not executed. It was reissued the 9th of June, 1792, and a return was made upon it, that land jvas sold in Davidson for part. A venditioni issued for the residue. On the 23d of October, 1793, Neville, by deed, reciting his appointment as special guardian, reciting also thefi.fa., and an order of July, 1793, to sell the real estate, and a sale made by Neville, by virtue thereof, of a tract of land in the forks of Red River, granted the 10th of July, 1788, to John Elliot, deceased ; he, therefore, conveyed the same to M‘CarroI. On the 23d of January, 1793, M‘Carrol conveyed to Reasons part of this tract, and on the same day to Pollard another part. They had possession from 1793 to the day of the trial, in August, 1816.
In 1812, a bond was made between M‘Carrol on the one side, and George S. Elliot, and Walker, who had married his sister, a daughter of J. Elliot, deceased, on the other, to abide by the award of certain persons; which bond is lost. The contents were proved on the trial to be, to submit all matters in dispute. The award was by parol, and directed M‘Carrol to pay George S. Elliot and Walker $400, and to make a deed to them for 320 acres of land in the county of Davidson, and that Oldham and Johnston should pay them $460 each. M‘Carrol executed a bond for the conveyance, *747 and a note for the money, and hath conveyed the land and paid the money, and hath also a receipt in full from them as legatees of J. Elliot, deceased. It was proved, on the trial, that the matters in dispute related to the lands and personal estate of J. Elliot, deceased, and more particular * the lands. The personal estate was worth not more than $200. The arbitrators thought, at the time they made the award, that M'Carrol had a good title to the lands. Zilpha Elliot, the wife of M'Carrol, and late widow of John Elliot, deceased, died in 1812. She was married to M'Carrol in 1792. This action was commenced on the 7th of February, 1816. George S. Elliot came of age May, 1809.
Upon this statement it must be taken that the sale to M'Carrol was made to him by a special guardian, and the deed executed by that guardian did in reality convey no title for want of an order, and also because an order for selling the ward’s estate could not legally be given to such a guardian. But he had by the deed an appearance or color of title. A color of title is, where a conveyance is made by an apparent owner, or person apparently having an authority over his estate, which conveyance would actually have passed the title, had the circumstances existed which were reputed to exist. Such color is not raised, either by a bond, covenant, or agreement to convey hereafter. That cannot be taken for a conveyance, which only stipulates for a conveyance to be made hereafter. Under such color, if the grantee by deed, or by what is equivalent in law for 'transferring the title, for example, a devise or descent, being in, shall continue in the actual possession for seven years, when no capacity or disability is imputable to the owner, and without any action commenced against him to recover the lands, his title will thereby become good and indefeasible forever. It is supposed by some that a deed founded upon a grant, the phraseology used in 1797, ch. 43, § 4, implies a regular chain of conveyances from the second or other subsequent grantee to the tenant, who has been in possession for seven years. Let us examine this position. Why should the Legislature prefer one who is in possession by a regular chain, to him who is in possession, but not by a regular * chain ? Has one a better title at first than the other ? Are they not equally innocent and equally meritorious in settling and improving the country, and in adding to its- strength, wealth, and importance ? Let us suppose a case. A is a second or *748 subsequent grantee. He dies intestate, leaving two sons, one born before wedlock, the other after. The elder was born in Scotland, before the removal of his parents to this country. The people here knows nothing of this circumstance. The elder sells one half of the lands, being supposed his share, as joint owner with his brother. He, the elder, is reputed the legitímate son; there is no doubt entertained or any suspicion of illegitimacy. The purchaser takes his deed, and lives seven years in possession, and then is sued by the younger brother, who proves the illegitimacy of his elder brother, and of course that his vendee originally had no title, and is not in by any regular chain. Is there any reason why he, his assignee,, alienee, or bargainee should not be protected ? Is he not within every consideration of the policy which provides for the protection of possessors ? The act meant no difference between such honest and innocent possessor and one no more honest and innocent, but more fortunate in having been less circumvented. Justice and sound policy require that both should be protected. Let us put another instance. A has a grant from North Carolina. He goes to England and resides there, and grants a power to B, in this State, to sell his lands. B sells and conveys on the 1st of August, but the owner in England died on the 30th July in the same year. The vendee pays the purchase money, which is transmitted to and received by the executors of the owner, and the vendee continues seven years in possession, and then is sued by the heir of him who gave the power. Here the vendee is not in by any regular chain ; he has no title in reality; but will any one say he ought not to be protected under the acts of 1715, * ch. 27, and 1797, ch. 43, § 4? The distinction which preserves those who are in by a regular chain, and not those who are in, but not by a regular chain, though equally free from fault in all respects, is merely verbal and arbitrary, and could not be designed by an enlightened Legislature. It does not exist but in the imagination of expounders. It is said the wording of the act will not admit of any other construction. We think far otherwise, as we will endeavor presently to show. But what if the words of an act be stubborn and inflexible, and yet, in the case before us, against the plain meaning of those who made use of them ? It is the business of a judge to resort even to subtlety to make the meaning take effect. Should a law inflict the penalty of death for drawing blood in the streets, *749 and, to save the life of a man flung from his horse, a physician should bleed him in the street, ought the law to be so construed as to inflict capital punishment upon the physician ? So neither is it proper in any case to adhere to the letter, where that will involve a manifest absurdity. We need not, however, in the present case, resort to this reasoning. The plain and accepted meaning of the terms employed lead naturally and without constraint to a far different conclusion. Whatever title cannot be supported but by producing a certain grant, is founded upon that grant. And in the cases just now stated, as well as in all others like them, what title had the apparent or reputed owner but one reputed to be and claimed by derivation under the second or subsequent grantee ? Again, wherever a term is used in one part of a law, and also in another part of the same law, if the meaning in one case can be clearly ascertained, the same meaning ought to affixed to it in others. Now, in 1797, ch. 43, § 3, any person claiming by deed of conveyance founded upon a grant, from whom possession shall be recovered, shall be paid for his improvements. Suppose, then, A, B, and C are made executors by the * grantee, and are empowered to sell; they all qualify, and one of them sells and make a conveyance, and the vendee takes possession, and the first grantee recovers ; shall the vendee be allowed for improvements ? Will it be said, No, he is not in by a deed founded upon a grant ? What right has the plaintiff in the ejectment, the first grantee, to say to the vendee, You were not in by a regular conveyance, when the heir of the second grantee is perfectly satisfied, and never intended to disturb the vendee ? When there is a complete accordance between the heir and vendee, shall a stranger, in no wise concerned, be allowed to usurp the place of the heir, arid to insist upon a privilege which the latter had determined never to use ? No, certainly, this stranger shall never be allowed thus to interfere. As to him, such deed is founded upon a grant; and so it is likewise in that clause of the same act which respects the limitation of actions. Why should the plaintiff in ejectment interfere in the trial in ejectment any more than in the former case, and say, True, the heir and ven-dee are united, and- agree that the vendee shall not be disturbed ; but, notwithstanding this, I. will act for the heir, for my advantage and not for his, and will take from him his election not to impeach the vendee, and will say, in spite of him, that he shall impeach it ? *750 There is no rationality in this. It cannot be law. Again, if the vendee in possession for seven years is not in for himself, under a deed of conveyance founded upon a grant, then he is in without title. And what is the consequence, then ? His possession is counted for him who is the apparent owner and executed the deed to him; and his possession, counted with this apparent ownership, will render perfect the title of the apparent owner; and the moment this is done, it inures to the perfection of the title which the 'apparent owner made to him; for if A convey to B when A hath no title, and afterwards obtain one, that inures * to the benefit of all his assignees, alienees, or bargainees. If the possession cannot be thus counted for the bargainor, any more than for the bargainee, because they are both equally destitute of regular claim or derivation of title, then, at least, the possession of the bar-gainee ought to be counted against the first grantee, and ought to bar him, leaving the dispute between the claimants under the second grant to be settled amongst themselves. The result of this reasoning is, that the lessor of the plaintiff is barred as to the bargainees of M‘Carrol. The act began to run in favor of the bargainees of M‘Carrol when they took possession under the deed made to them by M‘Carrol, which is more than seven years before the arrival to age of George S. Elliot, and he did not sue till after the expiration of three years from that time, and is therefore barred as to them under the acts above cited.
But as to M‘Carrol himself, the plaintiff is not barred by the act of limitations; for it did not begin to run in his favor till the expiration of the mother’s guardianship, or the coming to age of the heir; after which a continuation of the possession by M‘ Carrol became adverse to the heir. And from this latter period seven years have not expired before the commencement of this action. The deeds of conveyance made to the bargainees by M‘Carrol, cannot be taken to be good so far as the power of the guardian extends, and therefore to be good as leases till the heir come of age ; for they are not made' as leases in writing ; nor are covenants made that the tenants shall improve the plantation; nor other covenants made which are required by 1762, eh. 5, § 18, without which the lease is void. The bargainees are in no otherwise than under the title of M'Carrol, derived under the deed of Neville. Their possession under it is adverse to the heir’s title. In an action by *751 him by his next friend, they could not claim under * M‘Car-rol as guardian. Their possessions, therefore, were inconsistent with the heir’s title, and were adverse to his. M’Carrol, had he been sued, might have said, I am guardian and keep possession as such; and am as guardian entitled to the possession that shall be recovered in this action. His possession, therefore, is not adverse to the heir’s title, till by the death of the mother, or coming of age of the heir, the guardianship was determined. And from either of these periods seven years had not elapsed before the commencement of this action. The sale to M‘Carrol by Neville was void for the reasons given in 4th Haywood, 249. Indeed, this case is not as well founded as that was. That was by an order for the sale by a special guardian, but here is none. The time is too short for raising a presumption that one existed. The time, likewise, is too short for raising a presumption that he had conveyed to him. There is no evidence that the award was under seal, or that the submission extended to a determination upon the heir’s title to the land in question. Rather the contrary is inferable from the circumstances stated. This title, indeed, is capable of confirmation; but it is not confirmed by the act of limitations. Such part of the lands as remains in M‘Carrol’s possession, the plaintiff ought to have a verdict for.
Judgment was entered for Pollard and Reasons, absolutely ; and the record remanded as to M‘Carrol. And a motion being made for reconsideration as to the time when the act began to run against Pollard and Reasons, which it was urged was only from the coming of age of George S. Elliot, the court took time'to advise upon this part of the motion only until next term.
See, as to color of title, note to Wilson v. Kilcannon, 4 Hay. 182.